# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIANA R.,

                            Claimant,

           v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                       Respondent.

No. 21 CV 540

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Diana R.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 5]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties filed motions for summary judgment. *See* [ECF Nos. 15, 20]. This matter is fully briefed and ripe for decision.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 15] ("Motion") is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 20] is denied.

## PROCEDURAL HISTORY

On September 5, 2018, Claimant filed a Title II application for a period of disability and disability insurance benefits.[3] (R.16). In her application, Claimant alleged a disability beginning on July 22, 2016. (R.16).[4] The application was denied initially on November 13, 2018, and again on reconsideration on December 28, 2018, after which Claimant requested a hearing before an administrative law judge ("ALJ"). (R.16). On March 26, 2020, Claimant appeared telephonically and testified at a hearing before ALJ Edward P. Studzinski. (R.16). Claimant was represented by counsel at the hearing. (R.16). During the hearing, the ALJ also heard telephonic testimony from the Claimant's son, Julian R., and Aimee Mowery, a vocational expert. (R.16).

On April 13, 2020, the ALJ issued his decision denying Claimant's application for a period of disability and disability insurance benefits. (R.16-29). The ALJ followed the five-step evaluation process required by the Social Security Regulations to determine if an individual is disabled. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ observed that Claimant had worked after the alleged disability onset date,

---

[3] Although Claimant states in her Motion for Summary Judgment that her application was filed on July 30, 2017, [ECF No. 15] at 1, the Administrative Record confirms that Claimant's application was filed on September 5, 2018. (R.224-230).

[4] Claimant's previous claim for disability benefits was denied on March 15, 2017. [ECF No. 23] at 2 (citing R.156).

noting tax records showed Claimant "earned $10,000-$11,000 in 2018 to 2019." (R.18). The ALJ noted Claimant's representative said the work was done by Claimant's son but using Claimant's social security number, though she did not attempt to correct this with the Internal Revenue Service or the Social Security Administration. (R.18). The ALJ "afforded the claimant the benefit of the doubt" and concluded that Claimant had not engaged in substantial gainful activity since the disability onset date. (R.18).

At step two, the ALJ found that Claimant had the following severe impairments: depression, anxiety, and carpal tunnel syndrome. (R.18 (citing 20 CFR 404.1520(c)). The ALJ noted "[t]he State Agency assessed severe joint dysfunction." (R.19). The ALJ concluded Claimant's other impairments (morbid obesity, pre-diabetes with an A1c level of 6.2, and tension headaches) were not severe. (R.19).

At step three, the ALJ found that although Claimant has severe impairments, these impairments did not individually or in combination meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)). (R.19-21). The ALJ found Claimant did not satisfy Listing 1.02 for major dysfunction of a joint because she can ambulate effectively, is able to sustain a reasonable walking pace over a sufficient distance, and is able to use her upper extremities for fine and gross manipulation. (R.20). The ALJ found Claimant's mental impairments, considered singly and in combination, did not meet or equal the criteria of listings 12.04 and 12.06. (R.20). In making that finding, the ALJ considered and concluded that Claimant did not meet the paragraph B

3

criteria of at least two "marked" limitations or one "extreme" limitation, finding that Claimant had moderate limitations in understanding, remembering and applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (R.20-21). The ALJ also concluded the evidence fails to establish the presence of "paragraph C" criteria because Claimant was able to function outside, walk her dogs, run errands, take walks with her mother, go to stores, visit her husbands' work sites to assist with errands, attend doctor's appointments, and go to the gym. (R.21).

Before proceeding from step three to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"). (R.21). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). The ALJ concluded:

> "the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in her ability to sit, stand or walk throughout an 8 hour workday. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. The claimant can perform push, pull, and perform fine and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torqueing. The claimant is further limited to simple, routine tasks involving more than occasional and minor changes in the work setting. She is unable to work in crowded, hectic environments."

(R.21). At step four, the ALJ determined that Claimant had past relevant work as a punch press operator, a hand packager, and a grinder machine operator. (R.28). However, the ALJ concluded Claimant was unable to perform past relevant work due to the skill level or constant use of the hands required for a hand packager. (R.28). At step five, the ALJ considered Claimant's age, education, work experience, and

4

residual functional capacity, and concluded there are jobs that existed in significant numbers in the national economy that Claimant can perform, including based on the testimony of the vocational expert that Claimant would be able perform certain representative occupations (garment sorter and inspector). (R.28-29). For all these reasons, the ALJ found Claimant has not been under a disability, as defined in the Social Security Act, since July 22, 2016, the alleged onset date, to March 31, 2019, the date last insured. (R.29).

The Appeals Council granted Claimant's request for review on October 6, 2020. (R.4). Claimant did not submit any statement or additional evidence. (R.4). The Appeals Council issued a written decision on December 18, 2020 explaining that Claimant was not entitled to benefits but that Claimant last met the insured requirements of the Social Security Act on December 31, 2021, meaning the hearing decision left an unadjudicated two-week period from March 31, 2020 through April 13, 2020.[5] (R.4-9). Substantively, the Appeals Council adopted the ALJ's "statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." (R.4). The Appeals

---

[5] The Court notes the ALJ's decision contained an additional discrepancy as to the Claimant's date last insured: at the outset of the opinion, the ALJ defined the date last insured as March 31, 2020 (as noted by the Appeals Council), but in the conclusion of the ALJ's opinion, he stated the date last insured was March 31, 2019. *Compare* (R.5 to R.16). Given that the ALJ expressly defined the term "date last insured" as March 31, 2020 (R.16) and that the Appeals Counsel similarly treated this as the erroneous date last insured applied by the ALJ (R.5), the Court views the ALJ's subsequent reference to March 31, 2019 to be a typographical or even harmless error, thus not impacting the Appeals Counsel finding that there was only a two-week unadjudicated period in the ALJ's opinion.

Council also adopted all the ALJ's findings and conclusions regarding whether the Claimant is disabled other than as to the date last insured, including the ALJ's findings from Steps 1 through 5 of the sequential evaluation, and found Claimant has the RFC "to perform a reduced range of the light exertional level" with the following additional limitations:

> "the capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently, and has no limitations in her ability to sit, stand or walk throughout an 8 hour workday. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. The claimant can perform push, pull, and perform fine and gross manipulation frequently but not constantly, and is incapable of forceful grasping or torqueing. The claimant is further limited to simple, routine tasks involving more than occasional and minor changes in the work setting. She is unable to work in crowded, hectic environments."

(R.4-6). The Appeals Council concluded "although the claimant's exertional and nonexertional impairments do not allow her to perform the full range of the light exertional level" there were still "a significant number of jobs in the national economy which she could perform." (R.6). For these reasons, the Appeals Counsel extended the finding of not disabled through the date of the ALJ's opinion, April 13, 2020, thus encompassing the previously unadjudicated period. (R.7).

"[B]ecause the Secretary has delegated its authority to make final decisions to the Appeals Council," it is the Appeals Council's decision that constitutes the Secretary's final decision for purposes of judicial review under 42 U.S.C. § 405(g). *Bauzo v. Bowen*, 803 F.2d 917, 921 (7th Cir. 1986) (citations omitted). The decision of the Appeals Council is therefore final and reviewable by this Court. *Id. See also John E. v. Kijakazi*, 2021 WL 4125089, at *2–3 (N.D. Ill. Sept. 9, 2021) (Gilbert, J.).

## STANDARD OF REVIEW

The Court's analysis begins with the well-established principle that federal courts may review only the Secretary's final decisions. *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (citing *Califano v. Sanders*, 430 U.S. 99, 108 (1977)). The Appeals Council granted review in this case and, with a few modifications, adopted the ALJ's factual and legal conclusions in their entirety. Therefore, the Court must review both the Council's decision and the ALJ's underlying opinion as modified in timeframe only. 20 C.F.R. § 404.981; *see*, *e.g.*, *Arbogast v. Bowen*, 860 F.2d 1400, 1420-03 (7th Cir. 1988) ("We therefore review the decision of the Appeals Council rather than the decision of the ALJ. However, in this case, the Appeals Council explicitly adopted, as modified, the opinion of the ALJ. Accordingly, we must review the decision of the ALJ as modified by the Appeals Council.").

The Appeals Council is held to the same standard as the ALJ. *Sanford v. Berryhill*, 2018 WL 539804, at *3 (N.D. Ill. 2018) (citing *Bauzo*, 803 F.2d at 923). Judicial review is limited to determining whether the ALJ's decision – adopted by the Appeals Council – is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). This Court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

When a claimant files an application for disability benefits, he or she bears the burden under the Social Security Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial

7

gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi,* 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920). Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal quotations omitted); *see also* 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Even when there is adequate evidence in the record to support the ALJ's decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal

quotations omitted). In other words, if the ALJ's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before deciding whether to affirm the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also Gribben v. Kijakazi,* 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it.").

## ANALYSIS

Claimant argues the ALJ's decision cannot stand in this case because: (1) the ALJ erred in failing to adequately consider all of Claimant's impairments at Step Two; (2) the ALJ's finding that Claimant's carpal tunnel syndrome did not meet Listing 1.02 was not supported by substantial evidence; (3) the ALJ's finding that Claimant's treating physician opinions were not persuasive was not supported by substantial evidence; and (4) the ALJ's RFC analysis was not supported by substantial evidence. [ECF No. 15]; *see also* Plaintiff's Response to Defendant's Motion for Summary Judgment [ECF No. 22] ("Reply").

For the reasons discussed below, the Court finds the ALJ's determination that Claimant's carpal tunnel syndrome did not meet Listing 1.02 and the ALJ's rejection

of Claimant's treating physician's opinion regarding her ability to perform jobs requiring fine manipulation were not supported by substantial evidence. These errors require remand on this record, so the Court will not address Claimant's remaining arguments.

### A. The ALJ's decision at Step Three that Claimant's carpal tunnel syndrome did not meet the Listing 1.02 criteria was not supported by substantial evidence.

Claimant argues the ALJ's analysis as to whether her carpal tunnel syndrome satisfied the criteria for Listing 1.02 and Listing 1.00B2c was perfunctory and requires remand. [ECF No. 15] at 7-11. "Under a theory of presumptive liability, a claimant is eligible for benefits if he has a condition that meets or equals an impairment found in the Listing of Impairments." *Kastner v. Astrue*, 697 F.3d 642, 646–47 (7th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(d); 404.1525(a); 20 C.F.R. pt. 404, Subpt. P, App. 1). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (citing *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir.2004)). "[T]he claimant bears the burden of proving that his impairments meet or equal each element of a listed impairment." *Thomas H. v. Kijakazi*, 2023 WL 6388145, at *2 (N.D. Ill. Sept. 29, 2023) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)).

Listing 1.02 defines dysfunction of a joint as follows:

Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s),

and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

*Cox v. Kijakazi*, No. 21-CV-3075, 2023 WL 5938078, at *7–8 (C.D. Ill. Sept. 11, 2023) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02); *see also* [ECF No. 15] at 7-8; [ECF No. 21] at 4-5.[6] Listing 1.00B2c provides that "the inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living." [ECF No. 21] at 5 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2c). "The listing includes examples of an inability to perform fine and gross movements, including 'the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.'" *See Jones v. Colvin*, 2014 WL 185087, at *7 n.8 (N.D. Ill. Jan. 13, 2014).

---

[6] Commissioner notes that the agency rescinded Listing 1.02 and replaced it with Listing 1.18 effective April 2, 2021. Defendant's Memorandum in Support of Motion for Summary Judgment [ECF No. 21] ("Commissioner's Brief") at 4 n.2. The Court "must apply the version of the listing in effect at the time the ALJ issued the decision" and for that reason will analyze this appeal under Listing 1.02. *See Jason S*, 2022 WL 345092, at *2.

The ALJ's analysis at Step Three as it pertains to Listing 1.02 comprises two sentences stating Claimant "can ambulate effectively, and she is able to sustain a reasonable walking pace over a sufficient distance" and "claimant is able to use her upper extremities for fine and gross manipulation." (R.20). The ALJ does not identify or discuss any medical evidence in support of his conclusion. This strikes the Court, in the words of the Seventh Circuit, as "the very type of perfunctory analysis we have repeatedly found inadequate to dismiss an impairment as not meeting or equaling a Listing." *Minnick*, 775 F.3d at 935–36; *see also McCauley v. Saul*, 2021 WL 1946336, at *3–5 (N.D. Ill. May 14, 2021) (remanding where "ALJ merely quoted the requirements of the listing and stated without any further analysis that Plaintiff did not meet those requirements").

Moreover, the ALJ's reference to Claimant's ability to ambulate and walk appears irrelevant, as the issue analyzed by the ALJ later in his opinion was the extent to which Claimant's carpal tunnel syndrome impaired her ability to effectively use her wrists and hands. (R.22-27). Accordingly, the ALJ's analysis of whether Claimant's carpal tunnel syndrome satisfied the criteria of Listing 1.02 at Step Three of his analysis was not supported by substantial evidence. As discussed below, however, this does not end the inquiry, as the Court is required to consider the ALJ's entire opinion in determining whether his Listing determination was supported by substantial evidence.

### B. The ALJ's RFC analysis as to Claimant's daily living activities was not supported by substantial evidence.

An ALJ's decision must be read "as a whole" and the Court must consider "the

ALJ's treatment of the record evidence in support of both his conclusions at steps three and five." *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004); *see also Jason S. v. Kijakazi*, 2022 WL 345092, at *2 (N.D. Ill. Feb. 4, 2022) ("an ALJ's RFC analysis may doubly explain how the evidence shows that the claimant is not presumptively disabled under the pertinent listing"). Although the Commissioner makes a cursory assertion that the ALJ's abbreviated discussion at Step Three was reasonable, the focus of the Commissioner's arguments is on the ALJ's RFC analysis. *See* [ECF No. 21] at 5, 8 ("the ALJ's analysis is not perfunctory if the Court, as it must, reads the ALJ's decision commonsensically and considers the ALJ's reasoning about her wrist impairment from other areas of the decision," citing *Lloyd v. Berryhill*, 682 F. App'x 491, 496 (7th Cir. 2017).[7]

The Commissioner argues the ALJ's finding that Claimant could use her upper extremities to carry out daily activities was sufficient to support his determination the Listing 1.02 criteria was not satisfied. [ECF No. 21] at 5. In support, the Commissioner points to the ALJ's discussion of evidence showing Claimant "does more frequent activities outside the home." [ECF No. 21] at 6; (R.22 (citing Ex. 6F/9, 23, and 11F/20)). The Commissioner argues that evidence "showed that she helped her husband with her business, walked her dogs, ran errands in the morning, took walks with her mother, went to stores, and went to the gym." [ECF No. 21] at 6. The

---

[7] *Lloyd*, an unpublished Seventh Circuit decision, held "the ALJ erred by omitting discussion of Listing 1.03, but any error was harmless" because the ALJ's "later discussion supported her determination that Listing 1.02 was not met; she did not need to repeat herself when considering the listing" and "because any discussion of Listing 1.03 would involve the same evidence and ultimate conclusion, the omission was harmless." 682 F. App'x at 496.

ALJ referenced Claimant's testimony that she relied "on her husband or son to do all the paperwork, bills, etc." but said this was "inconsistent with references to her helping with her husband's business." (R.22). The ALJ noted Claimant's testimony that she was unable to do "any chores, cooking, shopping" and needs "help using the shower," as well as Claimant's adult son's (who lives with her) corroborating testimony that "he does the household chores before going to work" and Claimant is "unable to cook, clean, or shop." (R.22-23). Although the ALJ said this testimony "was inconsistent" with the record, he did not identify any contradictory evidence regarding Claimant's ability to do chores, cook, and shower. The ALJ also observed Claimant was able to run errands, take walks, and go to stores, doctor's appointments, and the gym. (R.21-22 (citing Ex. 6F at 9, 23, Ex. 11F at 20, and Ex. 4E)).

The ALJ's analysis of Claimant's ability to engage in daily activities does not provide substantial evidence supporting his conclusion as to Listing 1.02 that Claimant "is able to use her upper extremities for fine and gross manipulation." (R.20). He did not discuss whether or how Claimant's ability to engage in activities such as taking walks, running errands, and going to stores, doctor's appointments and the gym necessarily involved effective use of her upper extremities as contemplated by the listing. While the ALJ noted a report from Claimant's treating social worker referenced her doing "paperwork" for her husband's business, there is no analysis about the nature of that work or what sort of fine or gross manipulation

it required. (R.26).[8]

Moreover, the ALJ "cherry-picked" his findings regarding Claimant's activities. For example, the ALJ cited Claimant's function report from September 2018 (Ex. 4E) to support his finding that she was able to go to stores and attend doctor's appointments (R.21), but ignored other aspects of the report pertaining to Claimant's ability to use her upper extremities, including statements that she could not use her hands for very long due to stiffening, swelling and pain; her son helps with chores and taking care of family pets; she struggled with bathing because things fall out of her hands and her husband shaves her legs; her son brushes her hair; and she is unable to cook because her hands swell due to heat, and she was prescribed to wear braces on both of her hands all the time. (Ex. 4E (R.266-280)). The ALJ similarly did not address Claimant's testimony that her husband helped her with bathing. (R.67.) Although the ALJ noted Claimant's occupational and physical therapy was discontinued due to lack of progress (R.23), he did not describe other findings from the therapy reports describing Claimant's "[e]volving worsening symptoms" and restrictions in performing daily activities such as "cooking, cleaning, lifting small objects." (Ex. 4F (R.414-423); *see also* Ex. 5F (R.428-434)).

The ALJ appears to have primarily relied on his negative credibility assessment of Claimant in his RFC analysis as to the carpal tunnel syndrome. The ALJ cited two notations about Claimant assisting with her husband's business in

---

[8] When the ALJ inquired as to whether Claimant performed work for her husband, she denied doing such work. (R.79).

social worker reports and stated "[n]either the claimant nor her representative offered any explanation as to why her counselor consistently referred to her involvement with her husband's business." (R.21 (citing Ex. 6F at 9 and 23); R.22 (again citing Ex. 6F); R.25)). The ALJ also found Claimant's testimony that she did not work during the disability period to be inconsistent with tax records showing earnings for 2018. (R.22). Although the ALJ noted Claimant's attorney's explanation that the IRS filings reflected work performed by her son using her social security number, the ALJ observed "[n]o explanation was offered as to why this income was not properly reported or corrected . . ." (R.18). As the Commissioner noted, the ALJ inquired as to whether this was indicative of fraudulent behavior. [ECF No. 21] at 14-15 n.5. Nevertheless, the ALJ afforded Claimant "the benefit of the doubt" that the work "did not rise to the level of substantial gainful activity" and for that reason went on "to complete the sequential disability analysis." (R.18).

While an ALJ's credibility assessment is entitled to deference, the ALJ here did nothing to reconcile his assessment of Claimant's credibility regarding her work history with the medical evidence regarding the severity of her symptoms from her carpal tunnel syndrome and whether it satisfied Listing 1.02. (R.22). This is error that requires remand. *See Barnett*, 381 F.3d at 670 (ALJ's two-sentence consideration of Listing was "inadequate and warrants remand" where ALJ relied on his disbelief of claimant's testimony regarding seizures without considering medical evidence regarding the number of seizures and "thus, we cannot discern if the ALJ ever considered whether [claimant's] impairment equals Listing 11.03 despite her

assumed lack of credibility"). Moreover, if Claimant's impairment satisfied Listing criteria, she would be considered disabled without consideration of her work experience or abilities. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (". . . for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work."); 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").[9]

The Commissioner also argues the state agency assessment of Claimant's carpal tunnel syndrome (which the ALJ found persuasive, *see* R.26) supports the ALJ's decision that Claimant's condition did not meet Listing 1.02. [ECF No. 21] at 7-8. The state assessment concluded that Claimant had a severe dysfunction of major joints due to carpal tunnel syndrome, and although the agency doctor expressly considered whether Claimant's mental health symptoms met Listings 12.04 and 12.06 (depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders), the assessment did not address Listing 1.02. (Ex. 1A (R.96-

---

[9] The ALJ's assessment of Claimant's subjective description of symptoms from her other claimed impairments (such as dizziness, falls, shoulder pain, fatigue, and frequent bathroom use) as embellished is also not, in the Court's view, relevant to the Listing analysis as to Claimant's carpal tunnel syndrome. (R.22).

106, at 99); Ex. 1A (R.96-106); *see also* Ex. 3A (R.108-116) (affirming on reconsideration)). Nevertheless, the Commissioner reasons the state agency must have concluded Claimant's carpal tunnel syndrome did not satisfy Listing 1.02 based on the transmittal form codes used and the fact that the state agency went on to address Claimant's physical RFC. [ECF No. 21] at 7-8. This is a bridge built on a foundation of thin air.

Given the ALJ's perfunctory analysis at Step Three and his abbreviated reference to the state assessment later in his opinion, the Court cannot ascertain whether the ALJ relied on the state assessment for his Listing finding. While there may be some logic to the Commissioner's reasoning, it was never offered by the ALJ and the Court cannot speculate about what the ALJ may have been thinking. *See McCauley*, 2021 WL 1946336, at *4; *Kastner*, 697 F.3d at 648 (rejecting Commissioner's arguments discounting evidence not considered by ALJ in listing level analysis); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("the agency's attorneys may not advance an explanation the agency never made itself . . ."); *Austin M. v. Saul*, 2021 WL 777855, at *9 (N.D. Ind. Mar. 1, 2021) (rejecting agency arguments that ALJ did not consider at Step Three).

Moreover, it is far from clear that the codes used on transmittal forms or the agency's RFC analysis would be substantial evidence that Claimant's carpal tunnel syndrome did not satisfy the Listing 1.02 criteria. *See Cummins v. Kijakazi*, 2022 WL 17432325, at *3 (N.D. Ind. Dec. 5, 2022) (agency doctors' "signatures on the forms finding no disability were not substantial evidence for the ALJ to rely upon in his

18

finding that 4.04 was not met" where doctors "made no mention of Listing 4.04 in their disability determinations" and "stated in their evaluations that the 'adult listings considered' for psychiatric listings were 12.06 and 12.08, but completely absent is any mention of considering Listing 4.04"). In any event, even if the state assessment had expressly found Claimant did not satisfy the Listing 1.02 criteria, the ALJ failed to reconcile that assessment with the 2019 evidence that Claimant's carpal tunnel syndrome had recurred (as discussed further below). This error also requires remand. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) ("ALJ erred by continuing to rely on an outdated assessment by a non-examining physician"); *Massaglia v. Saul*, 805 F. App'x 406, 409–10 (7th Cir. 2020) ("Opinions of state-agency consultants may constitute substantial evidence on the issue of whether a claimant's impairments meet a presumptive disability listing . . . An ALJ may rely on a reviewing physician's assessment unless later evidence containing new, significant medical diagnoses 'changed the picture so much' that it reasonably could have changed the reviewing physician's opinion.") (internal citations omitted).[10]

Accordingly, because the ALJ did not identify substantial evidence supporting his determination that Claimant was able to effectively use her upper extremities for gross and fine manipulation, the case must be remanded for further proceedings.

---

[10] The Commissioner asserts the ALJ considered evidence from after the state assessment was completed and found it "counseled additional postural and mental limitations that the ALJ included in the RFC assessment." [ECF No 21] at 12. While the ALJ did state "additional evidence was submitted at the hearing level which support more moderate mental limitations," the ALJ did not articulate how he considered the 2019 evidence regarding Claimant's carpal tunnel syndrome or explain whether he incorporated any additional physical limitations based on that evidence. (R.25-26).

### C. The ALJ cherry-picked evidence in support of his RFC analysis as to the limitations imposed by Claimant's carpal tunnel syndrome.

Although the ALJ summarized the record regarding Claimant's carpal tunnel syndrome in his RFC analysis, his selective consideration of the record ignored evidence suggesting Claimant's condition imposed additional limitations on fine and gross manipulation. (R.20-27).

The ALJ stated that in October 2016, an EMG/NCV test revealed Claimant had moderate to severe bilateral wrist median mononeuropathy that was greater on the left than on the right hand. (R.23). Claimant was diagnosed with bilateral carpal tunnel syndrome, initially treated with injections in each wrist, and had surgery on her left hand in January 2017. (R.22). In March 2017, Claimant reported "her symptoms had completely resolved" and she had "regained full function of the hands without paresthesias." (R.23).

A little over a year later, on June 2, 2018, the ALJ noted Claimant "reported left forearm dull achy pain with no numbness, tingling, weakness, swelling or redness." (R.23 (citing Ex. 3F/37-38)). Although the ALJ characterized these results as "normal," he did not address her treater's referral to a sports medicine physician. (Ex. 3F (R.300)). Nor did the ALJ discuss Claimant's examination, per that referral, by Dr. Kyle Geissler two days later. (Ex. 3F (R.393)). Following the June 4, 2018, examination, Dr. Geissler stated Claimant was positive on Tinel's and Phalen's tests for the wrist, assessed Claimant as having "a combination of CTS and cubital tunnel bilaterally, worse on the left," and recommended a course of occupational therapy and wrist bracing, which Dr. Geissler prescribed her to wear at all times. (Ex. 3F (R.397);

Ex. 4F (R.427)). The ALJ did note Claimant engaged in occupational and physical therapy in June and July of 2018, which was discontinued due to lack of progress, (R.23); however, as noted above, the ALJ did not describe other potentially relevant findings from when her therapy ceased. (Ex. 4F (R.414-423)).

The ALJ acknowledged Dr. Geissler evaluated Claimant on August 6 and August 31, 2018. (R.24). According to the ALJ's summary, Dr. Geissler's August 6, 2018 "[e]xamination revealed bilateral; (*sic*) decreased wrist range of motion with handgrip strength of 3/5 bilaterally" and Claimant received a wrist injection. (R.24). The ALJ said Dr. Geissler's examination on August 31, 2018 "reported that she did not improve with occupational or physical therapy or steroid injections." (R.24). Again, however, the ALJ did not reference other seemingly pertinent findings, including that Claimant had "lost all motion in the wrists," positive tests for Tinel's and Philen's, and a referral for an EMG/NCS test. (Ex. 3F (R.376-77)).

The ALJ's summary of medical evidence from 2019 further demonstrates improperly selective consideration of the record. The ALJ noted Claimant was seen in late February 2019 for her bilateral carpal tunnel syndrome, when she "complained of numbness, tingling, stiffness and lack of strength in her hands." (R.25). The ALJ also observed the report stated she wore hand braces with minor relief and her examination "revealed a positive Phalen's test and Tinel's sign bilaterally with markedly diminished grip and pinch strength." (R.25). Yet the ALJ did not discuss other findings from the February 27, 2019 report, which assessed Claimant as "presenting with the persistence/recurrence of the left upper tunnel syndrome after

the surgery" and found "evidence of moderately severe right carpal tunnel syndrome." (Ex. 7F (R.504-512, at R.507)). The report stated Claimant had "a limited range of motion in flexion of all the digits of both hands," "severe weakness of opposition of the thumb . . . on both sides," "swelling/inflammation of the interphalangeal joints of both hands" and "swelling and tenderness of the carpometacarpal joints of both thumbs with positive apprehension test." (*Id.*).

The ALJ focused primarily on the results of an April 2019 EMG/NCS test that the ALJ stated showed "moderate" bilateral carpal tunnel syndrome, but there is no analysis in his opinion as to whether such a "moderate" test result would be inconsistent with the Listing 1.02 criteria. (R.25 (citing Ex. 9F/1, 4 and Ex. 12F), R.26). Moreover, the ALJ omitted potentially significant findings from his summary of Claimant's subsequent evaluation in June 2019 that suggested her condition was more severe. The ALJ noted only that Claimant complained of "bilateral hand pain with numbness and tingling in the fingers," "reported loss of strength and dropping things," and otherwise stating she "had normal ambulation with no arthralagias, joint pain, edema, or fatigue." (R.25). The June 2019 report, however, noted severe symptoms, including "evidence of more synovitis on both sides with severe sensory loss in the median nerve distribution and lack of strength in the grip and pinch activities" noting "[s]ensations are impaired severely on both hands." (R.586-653 at 608 (Ex. 11F)). Claimant was assessed as "showing evidence of clinical synovitis of both wrists" and the April 2019 EMG/NCV test was described as showing "evidence of moderate to severe bilateral carpal tunnel syndrome." (*Id.*) Her physician noted it

22

"would be a difficult problem to address" with surgery on the left hand because of Claimant's prior surgery, and that corticosteroid injections and a wrist brace had not provided any relief. (R.586-653 at 608 (Ex. 11F)). Claimant was reported to have refused a surgery on her right hand. (R.586-653 at 608 (Ex. 11F)).[11] Thus, the ALJ selectively ignored reports of Claimant's worsening symptoms and for that reason failed to reconcile the evidence of more severe symptoms with his conclusion that Claimant's carpal tunnel syndrome was moderate. *See Catrina M. T. v. Comm'r of Soc. Sec.*, 2023 WL 2706642, at *9 (N.D. Ind. Mar. 30, 2023) ("Further review of the records cited by the ALJ in support of his conclusions of more normal findings for [claimant's] RFC reveal additional cherry-picking.").

It is well-settled that an ALJ cannot cherry-pick which evidence to evaluate and disregard other critical evidence. *See Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014). The Court cannot make assumptions about how the ALJ evaluated and weighed the evidence when there is evidence in the record that is inconsistent with the ALJ's evaluation that the ALJ did not discuss. *See Briscoe*, 425 F.3d at 352 (finding that an ALJ must explain how the evidence supports their specific functional restrictions); *Scott v. Astrue*, 647 F.3d 734, 740-41 (7th Cir. 2011) (holding that an ALJ must consider claimant reports on the limiting pain of their medically determinable impairments). Where "the ALJ simply cherry-picked some evidence

---

[11] The June 2019 report also stated Claimant complained of "sharp pain" on both hands, a 10/10 on the pain scale, and that she takes 800 mg of Ibuprofen with no relief. (R.586-653 at 608 (Ex. 11F)). It noted Claimant reported wearing hand braces only at night, but said an examination of her wrist and hand remained "unchanged." (R.586-653 at 608 (Ex. 11F)).

and did not address conflicting evidence in the record or explain how [ALJ] weighed and presumably rejected that evidence," remand is necessary because ALJ "did not explain her decisional process sufficiently for the Court to be able to conclude that her ultimate decision is supported by substantial evidence." *See Justin C. v. Kijakazi*, 2022 WL 4482760, at *4 (N.D. Ill. Sept. 27, 2022) (Gilbert, J.).

### D. The ALJ's analysis as to the persuasiveness of the medical opinions regarding Claimant's carpal tunnel syndrome was not supported by substantial evidence.

As Claimant's application was filed after March 27, 2017, the Court considers the ALJ's analysis of the medical opinions under the revised regulations, which require the ALJ to explain, at minimum, how he considered the factors of supportability and consistency in deciding the persuasiveness of a medical opinion. *See* 20 C.F.R. § 416.920c(b)(2); *see also* [ECF No. 21] at 9-10.

On September 4, 2018, Dr. Geissler provided a one sentence opinion stating he was following Claimant "for her bilateral carpel tunnel syndrome" and that she was "unable to do any occupations involving fine manipulation due to her pain and numbness." (R.424). The ALJ found this "opinion not persuasive and not supported by the overall evidence of record" because Dr. Geissler "did not use criteria consistent with SSA to determine disability and did not refer to the medical record to support his opinion." (R.26).

As an initial matter, although the ALJ said Dr. Geissler did not consider the medical record, the ALJ failed to address Dr. Geissler's reports of his treating examinations of Claimant in the months preceding his opinion. (R.24). *See Cady v. Kijakazi*, 2023 WL 2966020, at *3 (W.D. Wis. Apr. 17, 2023) (ALJ engaged in "obvious

24

and dubious cherry-picking" of evidence in rejecting opinion from treating physician that claimant met listing where opinion was based on physician's psychiatric assessments in prior months). Moreover, the fact that Dr. Geissler did not discuss Claimant's limitations using SSA criteria did not relieve the ALJ of the obligation to consider the opinion and the records of Dr. Geissler's examinations. *See Robert N. v. Kijakazi*, 2022 WL 14634815, at *6 (N.D. Ill. Oct. 25, 2022) (ALJ impermissibly cherry-picked by giving little weight to psychologist's opinion because he did not "define [claimant's] learning disorder 'in terms consistent with SSA criteria'"; psychologist's "report includes information that the ALJ should not have ignored").

In addition, although while rejecting Dr. Geissler's opinion the ALJ noted "[a]n EMG showed bilateral moderate carpal tunnel syndrome" (referring to April 2019 EMG/NCS test (R.26 (citing 9F/4)), the ALJ did not articulate why he viewed Dr. Geissler's September 2018 opinion as inconsistent with moderate test results. *See Hoffswell v. Berryhill*, 2018 WL 4005207, at *2 (N.D. Ill. Aug. 22, 2018) (remanding where ALJ failed to properly assess treating physician's opinion; ALJ did "not explain . . . how a Global Assessment of Functioning . . . score of 55, which indicates 'moderate symptoms or moderate difficulty with social and occupational functioning' is inconsistent with [the doctor's] conclusions") (internal citations omitted).

The Commissioner argues the state assessment (which the ALJ found persuasive) considered Dr. Geissler's opinion but "concluded that, despite her impairments, Plaintiff could nevertheless perform light work with a limitation to frequent handling and fingering." [ECF No. 21] at 7. The ALJ, however, did not

address the state assessment's evaluation of the supportability and consistency of Dr. Geissler's opinion. (R.26). Moreover, as to Dr. Geissler's opinion, the state assessment found "[t]here is some consistency. The evidence is partially credible as the records do suggest manipulation concerns." (Ex. 1A (R.96-106, at 98, 102)). Although the ALJ generally found the state assessment persuasive, he did not reconcile the findings that Dr. Geissler's opinion was "partially credible" as to "manipulation concerns" with the ALJ's decision to reject any persuasiveness to Dr. Geissler's opinion. For these reasons, the Court finds the ALJ's rejection of Dr. Geissler's opinion was not supported by substantial evidence and requires remand.

The Court further notes there are other discrepancies in the ALJ's discussion of the state assessment of Claimant's carpal tunnel syndrome that warrant additional consideration on remand. While the ALJ said the state assessment conducted in late 2018 found Claimant could engage in "frequent pushing, pulling, handling, and fingering," the ALJ's opinion did not provide a citation to this frequency finding. (R.26). The Commissioner cites pages of the state assessment in support of the "frequent" manipulation finding. [ECF No. 21] at 12 (citing R.102-03, R.115-17). Based on the Court's review, however, that assessment did not say Claimant was able to engage in "frequent" fine and gross manipulation. To the contrary, it appears to suggest Claimant was able to engage in only limited fine and gross manipulation.[12]

_____

[12] In the "Findings of Fact and Analysis of Evidence," the state assessment stated "claimant has braces on both her wrists and seemed to be in a lot of pain. Unable to pick up the application up for review." (Ex. 1A, at R.99). In the physical RFC, the assessment concluded Claimant's ability to "push and/or pull (including operation of hand and/or foot controls)" was "[l]imited in upper extremities" for "both" hands, found she had "manipulative limitations," and described her as "Limited" in "both" hands for "Handling (gross manipulation)" and

26

Whether Claimant was able to engage in "frequent" use of her hands for fine or gross manipulation also appears potentially material to the RFC analysis. (R.91-92 (vocational expert testified at hearing that if an individual was restricted to using their hands only occasionally for fine and gross manipulation there would not be any light exertional level work that individual would be able to perform)).

The Court expresses no opinion on Claimant's remaining arguments (including as to Claimant's mental health and other impairments), or the decision to be made on remand. But the Court encourages the ALJ to do what is necessary to build a logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that [she] may build a 'logical bridge' between the evidence and his conclusions"); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). Claimant's counsel "should raise all issues argued on appeal with the ALJ on remand" to avoid any

---

"Fingering (fine manipulation)," as well as "Unlimited" for "Reaching any direction" and for "Feeling." (Ex. 1A, at R.102-103; *see also* R.115-17). The state assessment cited the August 6, 2018 examination in support of these limitations, noting Claimant's bilateral hand pain had worsened despite physical therapy and braces, positive Tinel and Phalen tests, and stated: "Frequently limited with both hands. Frequently limited push/pull." (*Id.*) The state assessment did conclude that Claimant was not disabled and able to perform light exertional work. (Ex. 1A, at R.104-105). Nevertheless, as the ALJ did not explain the basis for his conclusion that the assessment supported Claimant's ability to perform light work with "frequent" pushing, pulling, handling, and fingering, the Court cannot determine whether the ALJ's determination was supported by substantial evidence.

waiver if the case is again appealed to this Court. *See Thomas H. v. Kijakazi*, 2023 WL 6388145, at *4 (N.D. Ill. Sept. 29, 2023)

## CONCLUSION

Accordingly, for all the reasons set forth above, Claimant's Motion for Summary Judgment [ECF No. 15] is granted, and the Commissioner's Motion for Summary Judgment [ECF No. 20] is denied. This matter is remanded to the Social Security Administration for proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   November 3, 2023